Susan Rotkis
AZBAR 032866
Price Law Group, APC
2290 East Speedway Blvd.
Tucson, Arizona 85719
T: (818) 600-5506
F: (818) 600-5406
E: susan@pricelawgroup.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| John Fralish, *on behalf of himself and those similarly situated,* | Case No.: |
| Plaintiff, | **Class Action Complaint and Demand for Jury Trial for Violations of Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*** |
| v. | |
| Early Warning Services, LLC, | |
| Defendant. | |

Plaintiff John Fralish ("Plaintiff"), on behalf of himself and all similarly situated individuals, by counsel, brings this case as a class action based on violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendant Early Warning Services, LLC ("EWS" or "Defendant").

## INTRODUCTION

1.     This is an action for actual, statutory and punitive damages, costs, and attorneys' fees brought pursuant to 15 U.S.C. §§ 1681, *et seq.*, the Fair Credit Reporting Act ("FCRA").

2.     This cause arises from EWS's unlawful conduct by withholding Plaintiff's consumer reports from him, despite his valid written requests supported by the identifying information required by EWS, and contrary to the requirements set forth pursuant to 15 U.S.C. § 1681g.

3.    The FCRA imposes several important procedural protections regarding acquisition of consumer reports, which are designed, in part, to ensure that consumer may properly examine their consumer files for accuracy and so that a consumer reporting agency can ensure it is only providing consumer files and report information to the consumers about whom the report or file relates.

4.    Within two years prior to the filing of this complaint, Plaintiff properly requested his consumer file in writing on three separate occasions with supporting documentation required by EWS to prove his identity.

5.    In response to each request, EWS refused to promptly provide a copy of his file or report unless he filled out a particular form.

## JURISDICTION AND VENUE

6.    This Court has federal question jurisdiction because this action arises out of violations of federal law.  28 U.S.C. § 1331, 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

7.    Venue in the District of Arizona is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transact business within this District, is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to the claims occurred in this District and Division.

## PARTIES

8.    Plaintiff John Fralish is a natural person residing in St. Joseph County, Indiana.

9.    Plaintiff is a *consumer* as defined by the FCRA, 15 U.S.C. §1681a(c).

10.    Defendant EWS is a *consumer reporting agency*, as defined in 15 U.S.C. § 1681a(f). On information and belief, EWS is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer reports*, as defined in 15 U.S.C. § 1681a(d), to third parties, such as banks, credit unions, or merchants.

-2-

11.     EWS's principal place of business is located at 16552 N. 90th Street, Scottsdale, Arizona 85260, and its registered agent in Arizona is Cogency Global Inc., located at 300 W. Clarendon Avenue, Suite 240, Phoenix, Arizona 85013.

12.     Upon information and belief, EWS disburses consumer reports to third parties for monetary compensation.

13.     EWS describes itself "bank-owned" and sells consumer reports to over 2500 financial institutions about consumers applying for financial products.

14.     At all relevant times, Defendant acted through duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

15.     Defendant's violations were not made in good faith conduct of their business, but were made intentionally or in reckless disregard of the Plaintiff's rights because Defendant did not maintain procedures reasonably adapted to avoid any such violation.

## FACTUAL ALLEGATIONS

16.     Under the FCRA, Consumers may request copies of their Early Warning Consumer files and reports from EWS, and EWS must provide all information to the consumers who do so as long as the consumer provides appropriate identification.

17.     The Plaintiff had suffered the adverse action of one or more of his bank and credit accounts being closed without receiving a legitimate explanation from the financial institution.

18.     The Plaintiff was justifiably worried that the closure of his accounts was based on false or derogatory consumer information shared about him among financial institutions and EWS.

19.     The Plaintiff had a right to learn the true reason for the account closures, whether false, derogatory and misleading information was in his file and/or had been shared in an EWS consumer report.

20.     On or about June 2020, Plaintiff mailed a letter by certified mail, to EWS. In

this letter, Plaintiff requested a copy of his Early Warning Consumer Report (the "First Request").

21.     Within the First Request, Plaintiff included his name, address, phone number, social security number, date of birth, and Indiana driver's license number for identification purposes. Plaintiff also included a photocopy of the front and back of his Indiana driver's license.   Plaintiff signed the request.

22.     Instead of providing the Plaintiff with the information he is entitled to and which he had requested, EWS mailed a non-responsive boilerplate letter to Plaintiff, dated June 24, 2020, and postmarked on June 29, 2020 (the "First Response").

23.     EWS's First Response letter requested that Plaintiff provide "Identifying Information Needed" to "help us verify your identify," and enclosed a form entitled "Consumer Identification and Certification Form" for Plaintiff to complete.

24.     The Consumer Identification and Certification Form specifically requests that the Consumer provide certain identifying information including the Consumer's name, name(s) previously used, mailing address, phone number(s), social security number, date of birth, and a copy of one form of approved identification, such as a Driver's License, ID Card, or U.S. Passport.

25.     Plaintiff's First Request included the exact identifying information as was requested within the Consumer Identification and Certification Form, where Plaintiff included his name, address, phone number, social security number, date of birth, and a photocopy of his driver's license.

26.     Upon information and belief, the Consumer Identification and Certification Form is designed to delay and avoid providing consumers with the information that they request instead of promptly responding to the request when the consumer supplies proof of his or her identity.

27.     On or about July 23, 2020, Plaintiff sent a second letter by certified mail requesting a copy of his Early Warning Consumer Report (the "Second Request").

28.     In the Second Request, Plaintiff included his name, address, phone number, social security number, date of birth, and his Indiana driver's license number for identification purposes. Plaintiff also included a photocopy of the front and back of his Indiana driver's license, as well as an Indiana Notary Acknowledgement for further identification purposes. He signed the Second Request.

29.     EWS responded with the same kind of non-responsive, boilerplate letter, dated July 29, 2020, and postmarked on July 30, 2020 (the "Second Response").

30.     EWS's Second Response requested that Plaintiff provide certain "Identifying Information Needed" to "help us verify your identify," and enclosed a Consumer Identification and Certification Form.

31.     The Consumer Identification and Certification Form specifically requests that a Consumer provide identifying information including the Consumer's name, name(s) previously used, mailing address, phone number(s), social security number, date of birth, and a copy of one form of identification, such as a Driver's License, ID Card, or Passport.

32.     Again, just like the First Request, Plaintiff's Second Request also included the exact same identifying information EWS required in its Consumer Identification and Certification Form. The Plaintiff's Second Request included his name, address, phone number, social security number, date of birth, a copy of his Driver's License, and his signature.

33.     On or about February 13, 2021, Plaintiff sent a third letter requesting a copy of his Early Warning Consumer Report (the "Third Request").

34.     In Plaintiff's Third Request, Plaintiff included his name, address, phone number, social security number, date of birth, and his Indiana driver's license number for identification purposes. Plaintiff also included a photocopy of the identification page of his U.S. Passport. Furthermore, Plaintiff included a copy of his Mishawaka Utilities bill and a copy of his Santander checking account statement for the $1/1/21 - 1/31/21$ statement period.

35.     Defendant EWS responded with the same or substantially similar, non-responsive, boilerplate letter, dated February 23, 2021 (the "Third Response").

36.     EWS's Third Response requested that Plaintiff provide certain "Identifying Information Needed" to "help us verify your identify," and enclosed a Consumer Identification and Certification Form for Plaintiff to complete.

37.     The Consumer Identification and Certification Form specifically requests that the Consumer provide certain identifying information including the Consumer's name, name(s) previously used, mailing address, phone number(s), social security number, date of birth, and a copy of one form of identification, such as a Driver's License, ID Card, or Passport.

38.     Once again, the Plaintiff's Third Request included all of the exact identifying information and proof of identity that EWS requested within the Consumer Identification and Certification Form. In Plaintiff's Third Request, he included his name, address, phone number, social security number, date of birth, driver's license number, and a photocopy of his U.S. Passport.

39.     Upon information and belief, when Plaintiff sent EWS his requests for a copy of his consumer file, EWS merely responded with - an automatic boilerplate letter asking for the identifying information that Plaintiff already provided to EWS.

40.     Plaintiff's requests were in writing, sent to Defendant at an address where it received such requests, were accompanied by a copy of Plaintiff's government-issued identification such as an unexpired driver's license or unexpired U.S. Passport, and other proof of address and identity.

41.     The information provided by Plaintiff in each of his requests was not only the information requested by EWS in its Consumer Identification and Certification Form, but it is objectively compliant with the "proper identification" requirement of 15 U.S.C. § 1681h(a)(1).

42.     The FCRA states that upon furnishing proper identification, the CRA "shall,

upon request, clearly and accurately disclose to the consumer" all information in the consumer's file at the time of the request. There is no authorization in the FCRA that allows a CRA such as EWS to refuse to comply with the "shall, upon request" provision of 15 U.S.C. § 1681g(a)(1) unless a consumer completes a form.

43.    Despite receiving multiple, valid requests for the consumer report, all containing government-issued identification and proof of address, Defendant refused to provide Plaintiff with his consumer file.

44.    In all of Defendant's communications, it failed to include any of the mandatory disclosures pertaining to Plaintiff's FCRA rights, as mandated by 15 U.S.C. § 1681g(a).

45.    Upon information and belief, Defendant obtained or had available substantial written material that informed it of its duties under the FCRA. Indeed, EWS has been previously sued for its violations of its obligations to comply the FCRA's disclosure requirements.

46.    Despite knowing of these legal obligations, Defendant acted consciously and willfully in breaching its known duties and depriving Plaintiff of his rights under the FCRA.

47.    Plaintiff alleges that Defendant's conduct as alleged herein was consistent with its established and systematically executed procedures and policies of noncompliance with the FCRA all designed to make more money for itself while depriving consumers of their rights to consumer information that EWS has and disburses about them.

48.    It is especially egregious where, as here, the Plaintiff was trying to find out the reasons that he had suffered closure of his bank and credit accounts and whether there was information in his consumer report that led other financial institutions to blackball him and refuse to extend credit or open a deposit account.

49.    Plaintiff was deprived of his right to review the sources of any derogatory or false information about him so that he could dispute any false or misleading information.

50.     To this day, Plaintiff has not been able to review and correct any derogatory, false or misleading information in his EWS report or file.

51.     Defendant's willful conduct entitles Plaintiff and all persons similarly situated to recover punitive damages, statutory damages, actual damages, and costs and attorney's fees for its violations of the FCRA. 15 U.S.C. § 1681n.

52.     In the alternative, Defendant negligently failed to comply with the Fair Credit Reporting Act in refusing to supply Plaintiff and similarly situated consumers their consumer file and report information continually sending boilerplate responses to Plaintiff without assessing the Plaintiff's valid request for his consumer file in violation of 15 U.S.C. § 1681o.

53.     In the alternative, Defendant negligently failed to comply with the Fair Credit Reporting Act by sending boilerplate responses to putative class members who were also requesting a copy if their individual consumer files in violation of 15 U.S.C. § 1681o.

54.     The number of individuals whose valid request for their individual consumer files that were denied to them by Defendant is likely numerous.

<u>**COUNT I**</u>
**CLASS CLAIM FOR VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681g**

55.     Plaintiff relies on the facts described in the foregoing paragraphs to support the claims described further in this Complaint.

56.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this claim for himself and on behalf of a class initially defined as:

a.      **§ 1681g(a)(1) Failure to Disclose Class**

All natural persons residing in the United States: (1) who, within five years prior to the filing of the Complaint through the date of the class certification; (2) requested from Defendant a disclosure of their consumer file or reports; (3) which request contained appropriate identifying information; and (4) where Defendants failed to provide

the information required to be disclosed by 15 U.S.C. 1681g unless the consumer first completed a special form.

The Plaintiff is a member of this class.

57.    **Numerosity: Fed. R. Civ. P. 23(a)(1).**   EWS is a large, "bank-owned" consumer reporting agency that has 2500 financial institutions as its customers. Because of EWS's size, number of customers, and likely number of consumers about whom it collects, maintains and sells consumer information, the number of class members likely exceeds 50 individuals.  Therefore, Plaintiff alleges that the class members are so numerous that joinder of all is impractical.  The names and addresses of the class members are identifiable through the internal business records maintained by Defendants, including email addresses, phone numbers, and postal addresses.  The class members may be notified of the pendency of this action through mail and/or email.

58.    **Predominance of Common Questions of Law or Fact:  Fed. R. Civ. P. 23(a)(2).**  Common questions of both law and fact exist as to all members of each putative class.  The common factual and legal issues predominate over any potential individual issues.  The questions that predominate over questions affecting only individual class members are: (a) whether Plaintiff and each putative class member sent valid requests for mandatory disclosures under 15 U.S.C. § 1681g, (b) whether Defendant thereafter failed to provide such mandatory disclosures; and (c) whether Defendant's violations were negligent, reckless, knowing or intentionally committed in conscious disregard for the rights of the Plaintiff and putative class members.

59.    **Typicality. Fed. R. Civ. P. 26(a)(3).**  Plaintiff's claims are typical of the claims of each putative class member. Although the claims of the Plaintiff and class members do not need to be identical, in this case, the Plaintiff's claims are identical to the putative class members. Defendant failed to provide Plaintiff and each class member with statutorily mandated disclosures upon request in direct violation of the FCRA.  The Plaintiff's claim and the class member claims are based on the same facts and legal theories.

60.    **Adequacy of Representation.   Fed. R. Civ. P. 23(b)(3).** Both Plaintiff and his counsel are adequate to represent the interests of the class.   Plaintiff's interests are coincidental, and are not antagonistic, to the interest of the class members.   Plaintiff has retained experienced counsel who are competent in both class action litigation and the Fair Credit Reporting Act.   Neither Plaintiff nor counsel have interests that prevent vigorous prosecution of the case on behalf of the class.

61.    **Superiority.   Fed. R. Civ. P 23(b)(3).** Questions of law and fact common to the Class members predominate over question affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy.   The damages sought by each member are such that individual prosecution would prove burdensome and expensive.   It would be next to impossible for all class members to each find a lawyer and afford individual litigation.   Individualized litigation presents the possibility for inconsistent outcomes and contradictory judgments, increases delay and expense to all parties and to the courts.   By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based on a single set of proofs.

62.    Plaintiff explicitly requested information to which he was statutorily entitled to receive from Defendant several separate times.

63.    Each time, Plaintiff fully complied with the requirements of 15 U.S.C. 1681g and 1681h in providing adequate identification exactly as requested by EWS.

64.    Defendant failed to comply with the FCRA in responding to Plaintiff, failing to include the disclosures mandated by 15 U.S.C. 1681g and furthermore making the decision to waste Plaintiff's time by sending him boilerplate responses requesting the same identifying information that Plaintiff had already included in each of his requests.

65.    Defendant's decision to refuse Plaintiff the mandatory information was either intentional, or Defendant cared so little about the duties owed under the FCRA that their conduct was carried out with reckless disregard, which gives rise to a willful violation,

rendering Defendant liable pursuant to 15 U.S.C. § 1681n.

66.     In the alternative, Defendant negligently failed to comply with the Fair Credit Reporting Act in automatically sending boilerplate responses without first looking at the Plaintiff's and class member's valid requests, in violation of 15 U.S.C. § 1681o.

67.     Defendant caused Plaintiff and all members of the putative class to be injured by depriving them of their common law and statutory right to privacy and to be free from defamation, thus they have a common law right to know the information in their consumer reports. This deprivation is a harm which the FCRA was enacted to prevent. This harm caused Plaintiff damages in the form of informational injury, lost time, lost money, anxiety, frustration, confusion, mental pain and anguish, and embarrassment.

68.     Plaintiff and the class are entitled to recover statutory and punitive damages, costs and attorneys' fees in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n & 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff and the putative class members demand that this Court enter judgement against Defendant Early Warning Services, LLC for the following:

A.     Certifying the Class as described above pursuant to Fed. R. Civ. P.23(b)(3);

B.      Declaration that their FCRA rights were violated by Defendant;

C.     Judgment for statutory and punitive damages against Defendant;

D.     Judgment for attorneys' fees and costs, pre-judgment and post-judgment interest at the legal rate; and

E.     Such other relief the Court deems just, equitable, and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

 */s/ Susan Rotkis*
Susan Rotkis, AZ Bar # 032866
PRICE LAW GROUP, APC

1
2                                              2290 East Speedway Boulevard
                                               Tucson, AZ 85719
3                                              T: (818) 600-5506
                                               E: susan@pricelawgroup.com
4                                              *Attorney for Plaintiff*
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28